UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


MICHAEL W. CICERO, individually and on
behalf of all others similarly situated,

      Plaintiffs,

v.                                                                          HON. AVERN COHN

DIRECTV, Inc. d/b/a DIRECTV Home                          Case No. EDCV 07-1182
Services

      Defendant.
_____/

## FINAL ORDER AND JUDGMENT
## GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT
## AND
## GRANTING MOTION FOR AWARD OF ATTORNEY FEES, APPROVAL OF
## ADMINISTRATIVE EXPENSES, REIMBURSEMENT OF EXPENSES AND INCENTIVE
## AWARD PAYMENTS
## AND
## OVERRULING OBJECTIONS BY FRANCISCO MARENCO

### I. Introduction

      This is a class action claiming violations of California's wage and hour laws.  The

parties settled.  The Court preliminary approved the settlement.  See Doc. No. 76.

Plaintiffs' motions for final approval and for an award of attorneys' fees were heard on

June 28, 2010.  Plaintiffs, Defendant DIRECTV, Inc. d/b/a DIRECTV Home Services

("Directv") and Objector Francisco Marenco ("Marenco") appeared at the hearing

through their respective counsel.  Before the Court is the Motion of Michael W. Cicero

and Dmitry Gurevich ("Named Plaintiffs") for Final Approval of Settlement (Doc. No. 82)

and Named Plaintiffs' Motion for Award of Attorneys' Fees, Approval of Administrative

Expenses, Reimbursement of Expenses, and Incentive Award Payments (Doc. No. 83).

Also before the Court are Marenco's objection to the settlement (Doc. No. 80). After considering the various filings, and for the reasons below, the Named Plaintiffs' Motions will be granted and Marenco's objections will be overruled.

## II.  Background

### A.  Factual Background

The Named Plaintiffs are former satellite television installation and service technicians who brought this case individually and on behalf of all other similarly situated current and former satellite installation and/or service technicians against their former employers Mountain Center, Inc., and Ironwood Communications Inc. (currently DirecTV, Inc. doing business as DirecTV Home Services, collectively "Defendant") for allegedly violating California's labor and unfair competition laws.  Named Plaintiffs alleged that Defendant violated applicable provisions of the Industrial Welfare Commission's ("the IWC") Wage Orders, the Labor Code, and the Business and Professions Code by: (1) failing to provide employees duty-free meal periods; (2) failing to reimburse employees for tools necessary to the performance of the employees' work; (3) failing to pay wages for all hours worked, including hours worked in excess of eight per day and forty per week; (4) failing to pay all wages owed employees upon termination of the employment relationship; and (5) failing to provide accurate wage statements.

After conducting extensive investigation, including numerous witness interviews and depositions, exchanging written discovery requests and responses, and voluminous document and data productions, inspections and analysis, the Parties engaged in two

2

mediations of the matter before the Hon. William Cahill (Ret.) in March, 2009, and subsequently before the Hon. Diane Wayne (Ret.).  On October 19, 2009, the Parties reached the settlement now before the Court for final approval.

## B.  Settlement

The Stipulation and Settlement Agreement of Class Action Claims ("Settlement Agreement"), provides for (1) a Payout Fund to Settlement Class Members of $4,407,500.00; (2) an Attorneys' Fees Award of $1,950,000.00; (3) Named Plaintiffs' Incentive Awards of $7,500 to Plaintiff Cicero and $5,000.00 to Plaintiff Gurevich; (4) claims administration expenses not to exceed $60,000; and (5) litigation costs not to exceed $70,000.00.  "Plaintiffs" are defined as All persons who at any time from July 1, 2004, through the [date of preliminary approval] (the "Class Period") were non-exempt employees of Defendant, employed in California and engaged in the installation and/or service of satellite equipment on a piece-rate basis who have not already settled statutory wage or Labor Code claims against Defendant, pursued and recovered a remedy for statutory wage or Labor Code claims with the Division of Labor Standards Enforcement or some other government agency, or pursued and adjudicated a remedy for statutory wage or Labor Code claims with the Division of Labor Standards Enforcement or some other government agency.  The "Class Members" (also referred to as the "Class") consist of all Plaintiffs who do not properly elect to exclude themselves from the terms of this Agreement.  "Settlement Class Members" are all Class Members who submit a Claim Form/FLSA Consent Form that is approved for payment under the Settlement Agreement.  Defendant has identified 6,006 potential Class Members using contact information from its personnel records.

3

The Gross Settlement Amounts will be allocated among the Settlement Class Members, i.e. Class Members who timely complete and return a Claim Form/FLSA Consent Form, based upon the number of weeks each class member worked during the class period for an estimated payment of $17.24 per work week.  Potential Class Members were given a chance to opt out or object to the settlement by submitting a written request for exclusion within forty-five (45) days after the notice was mailed.

Notices were initially mailed to 6,006 potential Class Members, and as of June 3, 2010, 2,328 Claim Forms and 6 Opt-Out Requests were returned.  The 2,328 participating Settlement Class Members account for 61.9 % percent of the total weeks worked by all Plaintiffs.  To the extent that Class Members do not submit claim forms for their provisional share of the fund, the unclaimed share shall be redistributed to the class members who make timely claims on a proportional basis.

In return for the $6.5 million settlement, Class Members agree to release Defendants from: all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal constitution, statute, rule or regulation, including state wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties or liquidated damages, arising out of, relating to, or in connection with: any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, which are, or could be, the basis of claims (1) that DTVHS failed to provide Plaintiffs with meal periods and/or rest breaks, failed to compensate Plaintiffs for all hours worked, including overtime hours, or failed to reimburse Plaintiffs for work

4

related expenses in accordance with California law; and/or (2) that Directv owes wages, commissions, penalties, reimbursement, interest, attorneys' fees or other damages of any kind based on a failure to comply with any state wage and hour laws, including the Private Attorneys General Act, Labor Code § 2699 at any times on or before the last day of the Class Period (whether based on California state wage and hour law, contract, or otherwise); and/or the causes of action asserted, or which could have been asserted, in the Class Action, including any and all claims for alleged failure to reimburse Plaintiffs for work related expenses, failure to provide accurate wage statements, failure to provide meal periods and/or rest breaks or to compensate Plaintiffs for all hours worked, including overtime hours, in accordance with California law, including the Private Attorneys General Act, Labor Code § 2699 et seq. and, as related to the foregoing, for alleged unlawful, unfair and/or fraudulent business practices under California Business and Professions Code § 17200, et seq.

### III.  Legal Standard

Federal Rule of Civil Procedure 23(e) requires the Court to approve a class action settlement and requires notice of settlement to all class members. "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."   Staton v. Boeing Co., 327 F. 3rd 938, 952 (9th Cir. 2003).  The first step is to assess whether a class exists.  Id. (citing Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997)).

Second, district courts must evaluate "whether a proposed settlement is fundamentally fair, adequate, and reasonable," and, in doing so, the court "must pay

5

undiluted, even heightened, attention to class certification requirements."  Id. (internal

quotation marks and citations omitted).  To determine if a settlement is fair, some or all

of the following factors should be considered: (1) the strength of Plaintiffs' case; (2) the

risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining

class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the

experience and views of counsel; and (7) the reaction of class members to the

proposed settlement.  See, e.g., Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th

Cir. 1998); Staton, 327 F.3d at 959.

However, where a class settlement has been reached "after meaningful

discovery, after arm's length negotiation, conducted by capable counsel, it is

presumptively fair."  M Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp.

819, 822 (D. Mass. 1987); see also Manual for Complex Litigation, 2d § 30.45 (1993).

Judicial policy favors settlement in class action and other complex litigation where

substantial resources can be conserved by avoiding the time, cost, and rigors of formal

litigation.  In re Pacific Enterprises Securities Litig., 720 F. Supp. 1379, 1387 (D. Ariz.

1989).

### IV.  Discussion

### A.  Class Certification for Purposes of Settlement

A class may be certified for the purposes of settlement where a settlement is

reached before a litigated determination of class certification.  In re Beef Indus. Antitrust

Litig., 607 F.2d 167, 173-78 (5th Cir. 1979).  The Court must base its decision to certify

the class on the factors identified in Federal Rule of Civil Procedure 23(a): numerosity,

commonality, typicality and adequacy.

Numerosity.  Numerosity exists where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The parties identified at least [insert number of potential class members] current and former employees eligible as Class Members.  Notices were mailed to those 6,006 individuals and 2,328 submitted claim forms.  Courts have previously held that joinder is impracticable where there are more than 35 potential plaintiffs.  See e.g. Gay v. Waiters & Dairy Lunchmen's Union, 549 F.2d 1330 (9th Cir. 1997) (110 potential class members); Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620 (5th Cir. 1999) (100-150 members).  Accordingly, 6,006 is sufficient to satisfy the numerosity requirement.

Commonality.  Commonality exists where "there are questions of law and fact common to the class." Fed. R. Civ. P. 23(a)(2).  To satisfy this requirement, there must be "shared legal issues" or "a common core of salient facts."  Stanton, 327 F.3d at 953.  Here, the same legal issues are relevant to claims of all Plaintiffs, such as:  (1) whether the Class Members are entitled to reimbursement for expenses incurred in the performance of their work; (2) whether Class Members are entitled to wages for overtime and missed meal periods under California law; and (3) whether Defendant's business practices were unlawful, unfair, or fraudulent.  Additionally, each of the Plaintiff's claims arises from the same circumstances because each was employed by Defendant in California during the period beginning July 1, 2004, through March 11, 2010, required to purchase tools necessary to the performance of their work, subject to Defendant's uniform policies respecting meal periods, rest breaks and compensation for hours worked.

Typicality.  Typicality exists where "the claims and defenses of the representative

7

parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).
Here, the representatives are members of the group of employees denied
reimbursement for expenses, breaks and compensation for all hours worked.  Thus,
their claims and the claims against them will be typical of all class members.

Adequacy.  Adequacy of representation exists where "the representative parties
will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).
Satisfying this factor "depends on the qualifications of counsel for the representatives,
an absence of antagonism, a sharing of interests between representatives and
absentees, and the unlikelihood that the suit is collusive."  Brown v. Ticor Title Ins., 982
F.2d 386 (9th Cir. 1992).  Class Counsel are competent and experienced, and the
settlement was the product of arm's-length negotiations.  The representatives have
received no different treatment than the class members except that they will receive
enhancements in the aggregate amount of $12,500.

Certification of a class is appropriate where "questions of law or fact common to
the members of the class predominate over any question affecting only individual
members" and a class action is superior to other available methods for the fair and
efficient adjudication of the case.  Fed. R. Civ. P. 23(b)(3); accord, Amchem Prod., Inc.
Windsor, 5274 U.S. 591, 619, 117 S. Ct. 2231, 2196 (1997).  Courts commonly certify
class actions pertaining to wage and hour issues.  See, e.g., Wang v. Chinese Daily
News, Inc., 435 F. Supp. 2d 1042, 1059 (C.D. Cal. 2006).  Here, common questions
predominate over individual questions and a class action is the superior method of
resolving the dispute.  The potential recovery of each individual Plaintiff would not justify
the litigation expense and risk of inconsistent judgments.  Accordingly, the Court

8

concludes that the Named Plaintiffs and putative Class Members meet the requirements for certification under Federal Rule of Civil Procedure 23.

### B.  Approval of Settlement

The Court must base its approval of the settlement on the following factors: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement.  See, Hanlon, 150 F.3d at 1027; Staton, 327 F.3d at 959.

Regarding the strength of Plaintiffs' case, the Court must "determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case."  Livingston v. Toyota Motor Sales USA, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995).  The present case falls somewhere between the two extremes; so this factor is not an obstacle to approval.  Both sides participated in extensive and costly investigation and discovery and are well aware of the strengths and weaknesses of their respective cases in the absence of settlement.

The risk, expense, complexity, and duration of further litigation will likely be considerable for several reasons.  Among them is that, despite the extensive aggregation and analysis of evidence by the Parties to date and the attendant expenditure of considerable resources by the Parties, further collection and analysis of electronic data from disparate sources remains to be completed and the results will require further analysis.  The Parties anticipate that completing such collection and analysis will result in further expense and delay.  Additionally, California's requirements

9

respecting meal and rest periods are unsettled as reflected by the pendency of <u>Brinker</u> <u>Restaurant Corp. v. Superior Court</u> (2008) 165 Cal.App.4th 25 (rev. granted) before the California Supreme Court thus presenting uncertainty to both Parties.  For these reasons, Class Members have obtained a substantial benefit by securing the Settlement.

The amount of the settlement, $6.5 million, is less than Plaintiffs would seek through litigation.  However, the settlement bears hallmarks of fairness.  It was negotiated by experienced counsel and generally seems adequate.  <u>See</u> <u>In re Wash.</u> <u>Public Power Supply System Sec. Litig.</u>, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) ("Counsel's opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions.").

Additionally, the fund will be distributed based on the number of weeks worked by each class member, which appears to be a fair method of distributing the fund.

Since inception, discovery and investigation in this case has been contentious. The parties have exchanged numerous discovery requests and reviewed hundreds of documents.  Depositions have been taken of both Cicero and Defendants' corporate designees, and Plaintiffs' counsel have interviewed witnesses of Defendants' alleged reimbursement, overtime and rest break violations.  Thus, there has been sufficient discovery for the settlement to be deemed fair.  <u>See</u> <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 459 (9th Cir. 2000).

Finally, as noted above, only 6 Class Members have chose to opt-out of the Settlement.  As of June 3, 2010, the 2,328 Class Members who agreed to the Settlement Agreement represent 61.9% of the Class workweeks.  Only 1 Class Member

has made a valid objection.

Accordingly, the Court finds that the Settlement Agreement is fair, adequate, and reasonable and should be approved.

### C. Approval of Attorneys' Fees, Administration Expenses, Reimbursement of Expenses, and Incentive Award Payments

The Named Plaintiffs have separately moved for an award of attorneys' fees, administrative expenses, reimbursement of expenses, and incentive award payments. Each request is considered in turn.

As to attorneys' fees, the Settlement Agreement provides for a fee award to Class Counsel in an amount not to exceed $1,950,000.00.  This amount represents 30% of the total gross settlement amount.  As explained in Plaintiffs' Supplemental Brief Re Petition for Attorneys' Fees (Doc. No. 99), California recognizes the common fund doctrine for the award of attorneys' fees.  Under California and Ninth Circuit precedent, a court has discretion to calculate and award attorneys' fees using either the lodestar method or the percentage-of-the-fund method.  Wersha v. Apple Computer, Inc., 91 Cal. App. 4th 224, 253 (2001); Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002). The Court, in its discretion, finds that the percentage method is a fair, reasonable, and appropriate method for awarding attorneys' fees in this case.

The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method, with 20 to 30% as the usual range in common fund cases where the recovery is between $50 and 200 million.  Vizcaino, 290 F.3d at 1047.  Other case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in case in which the common fund is

11

relatively small.  See Rubenstein, Conte and Newberg, NEWBERG ON CLASS ACTIONS at §
14:6.  Indeed, California cases in which the common fund is small, tend to award
attorneys' fees above the 25% benchmark.  See Craft v. County of San Bernardino, 624
F. Supp. 2d 1113, 1127 (C.D. Ca. 2008) (holding attorneys' fees for large fund cases
are typically under 25% and cases below $10 million are often more than the 25%
benchmark.  More particularly, a review of California cases in other districts reveals that
courts usually award attorneys' fees in the 30-40% range in wage and hour class
actions that result in recovery of a common fun under $10 million.  See Vasquez v.
Coast Valley Roofing, Inc., 266 F.R.D. 482, 491-92 (E.D. Ca. 2010) (citing to five recent
wage and hour class actions where federal district courts approved attorney fee awards
ranging from 30 to 33%); Singer v. Becton Dickinson and Co., 2010 WL 2196104, * 8
(S.D. Ca. June 1, 2010) (approving attorney fee award of 33.33% of the common fund
and holding that award was similar to awards in three other wage and hour class action
cases where fees ranged from 30.3% to 40%); Romero v. Producers Dairy Foods, Inc.,
2007 WL 3492841 (E.D. Ca. Nov. 14, 2007).

Overall, although this percentage is slightly higher than the 25% benchmark for
fees in class action cases, it is consistent with other wage and hour class actions where
the recovery is less than $10 million.  Moreover, there have been no objections to the
amount of attorneys' fees.  The Court therefore finds that the amount of attorneys' fees
is warranted by the complexity of the case and Class Counsel's dedication of
extraordinary time and resources to the prosecution of this claim.

As to claims administration expenses, the Settlement Agreement provides that
the amount not exceed $60,000.00.  The Court finds this fair and reasonable.  The

same is true for reimbursement of litigation costs in the amount of $70,000.00 as provided in the Settlement Agreement.

With respect to incentive awards, the Settlement Agreement provided for an amount not to exceed $12,500.00.  Named Plaintiffs request $7,500.00 to Plaintiff Cicero and $5,000.00 to Plaintiff Gurevich.  The Court finds that the Named Plaintiffs, as Class Representatives, should be compensated a reasonable amount for their efforts on behalf of the class.  Cicero and Gurevich have actively participated in the action by assisting counsel and responding to discovery; they have undertaken the risk of serious litigation and absent their participation, the estimated $6.5 million Settlement would likely not have been possible.  In view of Cicero's and Gurevich's efforts on behalf of the Class, this Court believes the aggregate $12,500.00 incentive, constituting less than one percent of the Settlement, to be appropriate.  See In re Continental Illinois Sec. Litig., 962 F.2d 566, 571 (7th Cir. 1992) ("A class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action.").  Accordingly, the incentive amount will be approved.

### D.  Marenco's Objection

As noted above, there has been one valid objection to the Settlement,[1] by Marenco.  He objects to the scope of the release.  He believes that release language in

---

[1] As noted in the Interim Order Regarding Objections to Class Action Settlement (Doc. No. 102), the Court stated that it received objections from Claudio Cruz-Cabrera and was informed by Class Counsel that they received objections from Derek Denbesten.  The Court determined that since Denbesten did not file his objections with the Court, no action was required as to him.  The Court also found that Cruz-Cabrera's objections were not timely filed and even if timely, they lacked merit.

the settlement agreement is too broad and may be interpreted to bar claims not asserted by plaintiffs.  He is particularly concerned about a claim that Directv failed to properly pay employees with ADP TotalPay debit cards, in violation of California Labor Code Section 212 for failing to pay wages negotiable without discount.  This claim is based on the allegation that Directv paid wages to employees with ADP TotalPay debit cards which could not be used until activated and the activation fees were deducted from the funds loaded onto the cards by Directv.

It appears undisputed that the language of the release does not bar a claim under section 212.  However, there is a dispute as to whether a claim for "penalty wages" under California Labor Code Section 203, based on an underlying violation of section 212, is barred.  Marenco's counsel submitted release language used in other class action settlements where there was a carve out for a penalty wage claim under section 203 based on factual predicates different from the allegations in the settled case.  After receiving Marenco's objections, the Court encouraged "the parties to consider incorporating language into the settlement agreement which specifically preserves Marenco's rights to pursue a claim for deliberate of section 212 without prejudice to any attendant rights linked to such a violation."  <u>See</u> Memorandum Regarding Objection of Class Member Francisco Marenco to Proposed Class Action Settlement at p. 2 (Doc. No.98).  Directv was not disposed to alter the language in the release.

Marenco, Directv, and the Named Plaintiffs have filed several papers regarding this objection.  The Court, having fully reviewed them, finds that the language of the release must not be altered to specifically carve out Marenco's claims under section 212

14

or 203.  The language of the release was the product of careful bargaining by Class
Counsel and Directv and the Court sees no need to modify it.  To do so may risk
undoing a process which resulted in a very fair and reasonable settlement for the many
Class Members.  Likewise, to opine that the release does not bar any of Marenco's
claims could be construed as rendering an advisory opinion.  Overall, the release
language must stand.  Marenco's objection will be overruled.

### V.  Conclusion

For the reasons stated above, the Named Plaintiffs' Motions are GRANTED.
Marenco's Objections are OVERRULED.

The Court:

APPROVES the Settlement Agreement and the certification of the class for
settlement purposes only.  The Court finds that the Settlement Agreement has been
reached as a result of intensive, serious and non-collusive arms length negotiations.
The Court further finds that the Parties have conducted extensive and costly
investigation and research and counsel for the Parties are able to reasonably able to
evaluate their respective positions.  The Court also finds that settlement at this time will
avoid additional substantial costs, as well as avoid the delay and risks that would be
presented by further prosecution of the Action.

APPROVES a payout fund to Class Members of $4,385,000.00

APPROVES an attorney fee award of $1,950,000.00 to Class Counsel.  Any
separate appeal from the Fees Award portion of this Order shall not operate to
terminate or cancel the Settlement Agreement or otherwise affect the finality of this
Order or Judgment.

**07-1182 CICERO, et al v. DIRECTV**

APPROVES Incentive Awards of $7,500.00 to Plaintiff Cicero and $5,000.00 to Plaintiff Gurevich.

APPROVES claims administration expenses not to exceed $60,000.00.

APPROVES an award of litigation costs to Class Counsel not to exceed $70,000.00.

APPROVES a payment in the amount of $22,500.00 to the California Labor and Workforce Development Agency.

APPROVES the payment of the Gross Settlement Amounts to Class Members who submitted a timely and properly completed Claim Form.

The foregoing amounts shall be paid pursuant to the settlement formula set forth in the Settlement Agreement within timed periods set forth in the Settlement Agreement.

After the administration of the Settlement has been completed in accordance with the Settlement Agreement and all amounts calculated, and in no event later than 180 days after the Effective Date, Directv shall file a report with this Court certifying compliance with the terms of the Settlement Agreement.

**SO ORDERED**.


Dated:  July 27, 2010                            _S/Avern Cohn_____
                                                 AVERN COHN
                                                 UNITED STATES DISTRICT JUDGE

**07-1182 CICERO, et al v. DIRECTV**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 27, 2010, by electronic and/or ordinary mail.

 S/Julie Owens
Case Manager, (313) 234-5160

17